# Richmond.

## CITY OF DANVILLE v. H. F. HOWARD, ADMINISTRATOR OF RAYMOND HOWARD, DECEASED.

March 19, 1931.

Present, Prentis, C. J., and Campbell, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*A. M. Aiken,* for the plaintiff in error.

*Harris, Harvey & Brown,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This was an action brought by H. F. Howard against the city of Danville for the death of his infant son, Raymond Howard. The jury returned a verdict of $5,000.00, on which judgment was duly entered.

The first error assigned is the refusal of the trial court to set aside the verdict because there was no proof of negligence. This makes it necessary to review the facts.

The city of Danville owns and maintains for profit a cemetery in Pittsylvania county, which is under the management of a superintendent who has entire charge of all laborers working on the premises. One of these laborers was H. F. Howard, who as a part of his wage was furnished a residence on the cemetery property, with the privilege of pasturing and stabling a cow. The cow was kept in a stall which was a part of a larger building through which ran a hallway eleven feet wide and eighteen feet long, open from the ground floor to the roof.

In the fall of 1929 a loft was built in this hallway about eight feet above the ground, enclosed at both ends, with an outside door. The joists supporting the flooring of this loft were red oak rafters 2½ x 3½ taken from an old tobacco barn, and were about forty years old. These rafters were worm eaten and knotty. Many of them had been notched and in some the notches were so deep as to leave them only one inch thick. The flooring was oak timbers eighteen feet long and three inches thick; several of the witnesses stated that the weight of the flooring alone was all the joists should carry.

In the space under the loft was kept feed for a horse owned and used by the city, Howard's cow, and tools belonging to the city. Raymond Howard, an eight-year-old boy, usually went with his mother in the afternoon when she fed and milked the cow and kept some of his toys in this place.

The superintendent had stored some thirteen hundred pounds of fertilizer in the loft and decided to place more therein. On the 28th of December a truck driver brought a load of fertilizer to the cemetery and under the direction of the superintendent this was being stored in the loft. Howard was inside placing the bags of fertilizer as they were handed to him by the men from the outside. A few minutes before he went up in the loft he saw his son Raymond under it and told him to come out, which the boy did. It seems that the space in the loft was not sufficient to store all the fertilizer on the truck and it was determined to put the five remaining bags elsewhere. Just before the parties moved the loft collapsed and killed Raymond Howard, who had returned to the building without being seen by anyone.

The city of Danville was guilty of negligence in grossly overloading an insecure structure, which act of negligence is not seriously disputed. The city contends, however, that the boy in going under the loft was a trespasser or a mere licensee. With this contention we cannot agree.

Under the circumstances disclosed by the facts, Mr. Howard, the father, had the right to go under the loft not only in pursuit of the business of his master but it was necessary for him or some member of his family to go in daily to get feed for the cow. This right on the premises and under the loft grew out of his employment by the city.

As was said in the case of *Tugman* v. *Riverside Cotton Mills,* 144 Va. 473, 132 S. E. 179, 180: "This case is unaffected by the doctrine of landlord and tenant, except to show the right of the plaintiff to be on the leased premises. The liability of the defendant does not grow out of any act of the defendant as landlord, whether of omission or commission, but out of a positive act of negligence on its part, resulting in the injury complained of." The city's liability is for the affirmative wrong in creating a dangerous condition. 16 R. C. L., page 1066, section 587.

The child, under the circumstances, was more than a bare licensee and the city owed it the duty of using ordinary care to prevent overloading a loft known to be constructed of old and rotten timbers.

On the question of the contributory negligence of H. F. Howard, the evidence shows that he knew that the joists were old and brittle; that he saw them after they had been put in place and before any flooring was laid thereon; that he assisted in placing the heavy oak flooring; that after 1,300 pounds of fertilizer was stored in the loft he told the superintendent that he doubted the joists' strength to hold more. Before additional fertilizer was placed in the loft he saw his boy under it and told him to come out, which he did. Howard went in the loft without cautioning his son further and without sending him to the residence or placing him in the care of his mother, who was in the yard either at the time or a few minutes thereafter. It was the duty of the father to exercise ordinary care for the safety of his child. The same knowledge that the city had of the defective timbers

and the overloading them with heavy fertilizer Howard himself had. If these facts constituted negligence in the city they also constituted negligence in Howard.

The defendant in error recognizes this principle and contends that Howard was acting under direct orders from the superintendent, who was present and directing the work; that Howard had the right to, and did, rely upon the superior knowledge and judgment of the superintendent.

This might apply if Howard himself had been injured and his contributory negligence had been plead in bar of his recovery. Under such circumstances he would have been under the necessity of obeying his master's orders, but there was no necessity here for his leaving his eight-year-old son in close proximity to a dangerous situation, known by him to exist.

It is further claimed that the superintendent, Barker, should not have permitted the child to go under the loft. Barker testified that he saw the boy start toward the house after his father spoke to him and did not see him return to the place of danger.

The conclusion, therefore, is that the evidence establishes the contributory negligence of the father.

The remaining question is, is the contributory negligence of the father a complete bar to his recovery?

The plaintiff in error contends that the negligence of one parent is a complete bar to recovery for an infant's death, and in support of this contention cites *Richmond, etc.* v. *Martin,* 102 Va. 201, 45 S. E. 894; *Reid* v. *Medley,* 118 Va. 462, 87 S. E. 616; and *Ratcliffe* v. *McDonald,* 123 Va. 781, 97 S. E. 307. In each of these cases the parent, guilty of contributory negligence, was the sole beneficiary, and the whole of the recovery, if allowed, would have gone to him.

In the case of *Ratcliffe* v. *McDonald* it was held that in an action for the death of an infant, brought by the father, when the verdict of the jury was general and did not specify to whom the recovery should be paid, then, under the statute,

the recovery was for the benefit of the father and his contributory negligence would bar the action.

Since the decisions in the above three cases section 5788 has been amended and it is now the duty of the jury in such a case to specify the amount, or proportion, to be received by each of the beneficiaries, and in case of their failure to do so it is the duty of the trial court to specify the proportion each beneficiary shall receive.

In the case at bar the jury returned a verdict of $5,000.00 and gave one-half to the father and the other half to the mother.

The plaintiff in error maintains that notwithstanding the statute, the negligence of one parent will bar an action for the death of a child, citing 29 Cyc. p. 553. The only case which the author gives to support the text is that of *Toner* v. *South Covington & C. St. Ry. Co.,* 109 Ky. 41, 58 S. W. 439.

The case of *Darbrinksy* v. *Pennsylvania Co.,* 248 Pa. 503, 94 Atl. 269, L. R. A. 1915-E, 781, supports the contention of the plaintiff in error, but it is based upon the doctrine that because of the marital relation between husband and wife the negligence of one is imputable to the other, but such is not the law in this State. *Virginia Ry. & Power Co.* v. *Gorsuch,* 120 Va. 655, 91 S. E. 632, Ann. Cas. 1918-B, 838.

In the case of *Williams* v. *Lynchburg T. & L. Co.,* 142 Va. 425, 128 S. E. 732, which was an action to recover for the wrongful death of an infant, the ground of defense was that the death of the child was caused by the negligence of the father or brother. One of the errors assigned was the refusal of the trial court to give an instruction telling the jury that the negligence of the father or the brother of the decedent would not bar recovery. The court said: "We find nothing to criticise in this instruction. * * * We are of opinion that it should have been granted when offered."

The conclusion is that the father's contributory negligence only defeats recovery so far as he is concerned. The jury

having specified the proportion of recovery which the defendant in error should receive, it was error for the trial court to have refused to set aside that part of the verdict which allotted any sum to him; and this court, proceeding to enter such judgment as the lower court should have done, doth proceed to set aside the $2,500.00 allowed the father and enter up judgment for the $2,500.00 allowed the mother. The plaintiff in error having substantially prevailed in this court costs are awarded to it.

*Modified and affirmed.*