## Richmond

H. Phillips Godsey v. Charles Clyde Tucker, Administrator of the Estate of Ruth Campbell Tucker, Deceased.

November 22, 1954.

Record No. 4264.

Present, Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Sands, Marks & Sands* and *Bernard Mahon*, for the plaintiff in error.

*Frank B. Beazley*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Charles Clyde Tucker, administrator of his wife Ruth Campbell Tucker, plaintiff, brought this suit against H. Phillips Godsey, defendant, for damages for the wrongful death of Mrs. Tucker caused by a collision between the automobile driven by Godsey and the automobile driven by Tucker in which Mrs. Tucker was a passenger. The jury returned a verdict for $10,000 in favor of the plaintiff as administrator, without direction as to whom it should be paid. Under the circumstances later to be related the verdict was amended by the court to provide that it should be paid "to Charles Clyde Tucker, husband of the deceased," and judgment was entered thereon.

Under his assignments of error the defendant contends, as he did on his motion in the trial court to set aside the verdict, (1) that if Tucker was guilty of contributory negligence this fact, although it would not bar a recovery in his capacity as administrator, would nullify the verdict of which he was made the sole beneficiary; (2) that Tucker was guilty of contributory negligence as a matter of law, and hence the verdict should be set aside and judgment entered for the defendant; or (3) contributory negligence on his part was a question of fact which the jury did not decide and for decision of which a new trial should be awarded.

██ It seems to be conceded, and in any event it is clear, that the evidence supported the finding of the jury that Godsey was guilty of negligence which was a proximate cause of the collision. The accident happened about 10:10 a. m., October 29, 1951, on U. S. Highway No. 1 at Cedon, in Caroline county. At that point this highway runs north and south. Its hard surface is 40 feet wide, divided by solid white lines into two northbound and two southbound lanes, each ten feet wide and indicated by a broken white line. The scene of the collision was in open country where the road was level and straight, the pavement dry and the weather clear. No other vehicles were in sight when the accident happened.

Tucker was driving south in a Plymouth sedan with his wife beside him. Godsey was driving north in a Lincoln sedan. Tucker wanted to go to the Cedon post office which was just off the highway to his left. In his rear view mirror he saw some cars coming behind him so he pulled off the hard surface to his right about opposite the post office, stopped and waited there for about two minutes until the cars behind him had passed. He then looked south and saw the Godsey car coming over a knoll about 1,050 feet away. He saw nothing, he said, to indicate that it was approaching at excessive speed, and thinking he had time to cross in safety he turned left and started straight across the road in low gear at about ten miles an hour. According to his testimony, as he was crossing the center of the road, marked by the double lines, he looked again to his right and saw the Godsey car still about 150 steps away, or, as he also testified, about halfway from where he first saw it; whereupon, believing he still had time, he continued across the northbound lanes without again looking at the Godsey car. As he neared the far side of the road, or was about halfway across the northbound lanes, his wife said, "Make it quick," and almost instantly the crash came. The Godsey car had veered to the right and its right wheels were about two feet off the hard surface as it

struck the Tucker car on its right side when the latter was about halfway off the hard surface, and in a position which left ample space for the Godsey car to go behind it without crossing into the southbound lanes, according to the investigating officer.

This officer testified that the Godsey car made skid marks for 36 steps, or 108 feet, to the point of impact and then skidded for another 36 feet after striking the Tucker car. It knocked or propelled the Tucker car 99 feet, to where the latter struck a truck and knocked the back end of it around for a distance of nine feet.

The speed limit at the time was 50 miles an hour. Godsey claimed to have been going between 50 and 55 miles. His version was that he saw the Tucker car coming along in its right-hand lane; that when it was about 75 yards away it turned across the road going slowly; that he thought that it would stop and he, Godsey, was only about 75 feet away when Tucker drove on into his path; whereupon, to avoid a collision he cut to his right, but it was too late.

On the evidence the jury could find that Godsey was driving at excessive speed, failed to keep a proper lookout and was negligent not only in these respects but also in turning right when he could have turned left and avoided the collision.

The court instructed the jury that if the negligence of Godsey caused or efficiently contributed to the death of Mrs. Tucker they should find for the plaintiff.

The court further instructed the jury that the negligence of Tucker, if any, was not to be imputed to the plaintiff (Mrs. Tucker's administrator), and that even if Tucker was guilty of contributory negligence, that could not affect the plaintiff's right to recover damages. There was no objection by the defendant to this instruction. In fact, instructions offered by and given for the defendant recognized the correctness of that principle; and in his brief he says that he does not contend in any way "that the

contributory negligence of the driver of the [Tucker] car bars the action by the Administrator or the propriety of a verdict thereon." He properly concedes that such is the law in Virginia. *Williams* v. *Lynchburg T. & L. Co.,* 142 Va. 425, 128 S. E. 732; *Fruit Growers Express Co.* v. *Hulfish,* 173 Va. 27, 3 S. E. (2d) 160; *C. & O. Ry.* v. *Folkes,* 179 Va. 60, 18 S. E. (2d) 309.

It is true, however, as defendant argues, that it is the rule in this jurisdiction that one whose negligence efficiently contributes to an accident cannot recover for himself damages suffered thereby. No one can acquire a right of action by his own negligence. *Richmond, &c. Co.* v. *Martin,* 102 Va. 201, 45 S. E. 894; *Reid* v. *Medley,* 118 Va. 462, 87 S. E. 616; *Ratcliffe* v. *McDonald's Adm'r,* 123 Va. 781, 97 S. E. 307. But this rule does not affect the right of others not negligent for whose benefit the action lies. *City of Danville* v. *Howard,* 156 Va. 32, 157 S. E. 733; *Clinchfield Coal Corp.* v. *Webber,* 165 Va. 49, 181 S. E. 357.

Defendant contends that Tucker's own testimony and the physical facts show that without looking he drove from a place of safety across double white lines into the path of the defendant's car which was then dangerously near and coming at high speed, and thus he is convicted of negligence as a matter of law under such authorities as *Walker* v. *Crosen,* 168 Va. 410, 191 S. E. 753; *Yellow Cab Co.* v. *Gulley,* 169 Va. 611, 194 S. E. 683; *Penoso* v. *D. Pender Grocery Co.,* 177 Va. 245, 13 S. E. (2d) 310; *DeMuth* v. *Curtiss,* 188 Va. 249, 49 S. E. (2d) 250; and *Taska* v. *Wolfe,* 4 Cir., 208 F. (2d) 705.

If the evidence does not bring the case in judgment into the pattern of those just cited, then, the defendant argues, the question as to Tucker's contributory negligence was one of fact for the jury, and, as he correctly asserts, that question was not submitted to the jury by the instructions or necessarily decided by the jury.

On the record in this case the defendant is clearly estopped from relying on contributory negligence on the

part of Tucker, whether it appears as a matter of law or is a question of fact for a jury, as ground for setting aside the jury's verdict.

Without any objection by the defendant (plaintiff's counsel in oral argument stated that it was on motion of defendant's counsel, which the latter denied), the court gave this instruction to the jury:

"The court instructs the jury that in the event you find your verdict for the plaintiff that you shall assess damages, such amount as you feel fair and just not to exceed the amount sued for and that it is your sound duty to apportion such damages in such way as you see fit between the father, Mr. Charles Clyde Tucker, and the children and it is solely within your judgment as to how you divide the damages, if any, that is to say you may award the entire amount to any one person or divide it as above indicated as you see fit."

Thereafter the jury returned this verdict:

"We the jury find the defendant H. Phillips Godsey guilty of negligence, and set the damages at $10,000.00, to be paid to plaintiff Charles Clyde Tucker, Administrator of the Estate of Ruth Campbell Tucker, deceased."

Thereupon defendant's counsel stated to the court:

"If Your Honor please, before the jury is discharged, sir, I think that they should have their verdict comply with the statute. I think that it would go of course to the—"

The court interrupted and said: "Yes. Gentlemen, you all can give the money either to the husband or to the children, or any one of the children, or you can divide it between the husband and the children. * * * Do you want it all paid to the father?"

A juror replied: "That is right, that is what we decided."

The court then inquired of the jury: "Then you authorize me to strike out the name 'Administrator of the Estate', and it would all be paid to Charles Clyde Tucker? Very well. Now then it would read: 'We the jury find the defendant Phillips Godsey guilty of negligence and set

the damages at $10,000.00 to be paid to the plaintiff Charles Clyde Tucker.' "

The court then asked the jury if they all agreed to that and they answered that they did. The court then inquired of plaintiff's counsel whether he had any objection to the verdict and was told he did not, but defendant's counsel said this: "Might we suggest to strike out the word 'plaintiff' and let it indicate it be paid to Charles Clyde Tucker, the husband?" The court answered "Yes, sir," and defendant's counsel responded: "I think that would be the proper form." And then this followed:

"The Court: Yes. The verdict is 'We the jury find the defendant Phillips Godsey guilty of negligence and set the damage at $10,000.00 to be paid to Charles Clyde Tucker, husband of the deceased.'

"Mr. Sands [counsel for defendant]: Yes, sir.

"Mr. Beazley [counsel for plaintiff]: That is all right.

"The Court: Is that amendment agreeable to you gentlemen?

"Note: Counsel answered in the affirmative."

The defendant made no objection to the instruction which told the jury that if they found for the plaintiff on the evidence they should apportion the damages among the husband and the children (of whom there were nine, all of age except one) or give it all to any one of them. That instruction, therefore, became the law of the case on that point. 1 Mich. Jur., Appeal and Error, § 115, p. 571; *Babbitt* v. *Miller*, 192 Va. 372, 64 S. E. (2d) 718; *Hall* v. *Payne*, 189 Va. 140, 52 S. E. (2d) 76; *Ross* v. *Schneider*, 181 Va. 931, 27 S. E. (2d) 154. Defendant says in his brief that this was a proper instruction. He cannot now be heard to say that a verdict arrived at in accordance with it must be set aside.

Furthermore, as appears from the record quoted above, the verdict as first returned by the jury was a legal verdict. The court could have received it and then determined how the money should be apportioned. Code § 8-638. But the

defendant suggested that the jury make the apportionment and then without any objection he heard the court repeat to the jury, as it had told them in the written instruction, likewise without any objection from the defendant, that they might allot all of the damages to the husband. After that change was made, and before the jury were discharged, upon direct inquiry by the court as to whether the verdict as changed was agreeable to counsel, defendant's counsel answered in the affirmative. A judgment will not be reversed for an error invited by the party asking the reversal. 1 Mich. Jur., Appeal and Error, § 256, p. 674, and cases there cited. Neither will a verdict be disturbed that has been fairly agreed to by a competent party.

The judgment below is

*Affirmed.*